## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**FAUSTINO XAVIER BETANCOURT-COLON**,

     Plaintiff,

    v.

**ARCOS DORADOS PUERTO RICO, LLC**, *et al*.,

     Defendants.

Civil No. 21-1311 (BJM)

## <u>OPINION AND ORDER</u>

Faustino Xavier Betancourt-Colon ("Betancourt") sued Arcos Dorados Puerto Rico, LLC ("Arcos Dorados") and an unnamed defendant alleging unlawful discrimination in a place of public accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Dkt. 11-1. Arcos Dorados moved for summary judgment, Dkt. 32; Betancourt opposed and simultaneously cross-moved for summary judgment. Dkt. 41. Betancourt then filed additional exhibits to his motion. Dkt. 42. Arcos Dorados opposed Betancourt's motion, Dkt. 46, and Betancourt replied. Dkt. 49. This case is before me by consent of the parties. Dkts. 18, 19.

For the reasons set forth below, Arcos Dorados's motion for summary judgment is **GRANTED IN PART**, and Betancourt's motion for summary judgment is **DENIED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). And the court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## BACKGROUND

Betancourt alleges he has a disability within the ADA's definition because he suffers from congestive heart failure, hydrocephalus, abnormalities of the feet, diabetes, and obesity. Dkt. 41 at 7–8. He also claims substantial limitations to his major life activities including difficulties walking, running, getting up, and breathing. *Id*. He purportedly uses an electric wheelchair and a scooter to move around and has a valid handicapped parking permit. *Id*. at 8–9. Arcos Dorados does not presently challenge these claims.

Betancourt visited the McDonald's restaurant Arcos Dorados owns in Luquillo, Puerto Rico, approximately located at coordinates 18.37711841952495, - 65.7199462122341 per Google Maps ("the Luquillo McDonald's"), on April 24, 2021. *Id.* at 5. Betancourt wants to return to the Luquillo McDonald's because he likes the food and travels to the area to visit his brother and cousins who live four minutes away. *Id.* at 20. During his April 2021 visit, Betancourt found barriers in the restaurant's parking spaces, entrance ramp, front door, bathrooms, corridors, and check-out counter. *Id.* at 5–7. Arcos Dorados argues it addressed Betancourt's concerns and modified the Luquillo McDonald's to comply with the ADA. Dkt. 32 at 16–21. Betancourt hired Gabriel Santana-Concepción ("Santana") to visit the Luquillo McDonald's and evaluate the changes Arcos Dorados made. Dkt. 42-1 at 1. Santana visited the Luquillo McDonald's on April

30, 2022. *Id.* at 2. During this visit, Santana reported the Luquillo McDonald's had not adequately addressed Betancourt's concerns and he identified additional barriers at the Luquillo McDonald's that violate the ADA. *Id.* at 2–6.

Betancourt incorporated Santana's findings into his cross-motion for summary judgment and now alleges the following barriers at the Luquillo McDonald's: (1) there is a dangerous bump at the base of the access ramp; (2) the entrance area is too small to safely fit a wheelchair or scooter; (3) the two bathrooms both have signs displaying the international accessibility symbol but neither facility complies with the 2010 edition of the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"); (4) the unisex bathroom doorhandle is too high; (5) the area beside the unisex bathroom door lacks sufficient space to maneuver a wheelchair; (6) the unisex bathroom mirror is too high; (7) the side grab bar in the unisex bathroom is peeling off the wall; (8) the side grab bar in the unisex bathroom is more than 12 inches from the rear wall; (9) the area in front of the unisex bathroom toilet is too small; (10) the area adjacent to the unisex bathroom toilet is too small; (11) the women's bathroom doorhandle is too high; (12) the space between the sink and the baby changing station is too small; (13) the pipes under the women's bathroom sink are exposed; (14) the space in front of the women's bathroom toilet is too small; (15) the women's bathroom mirror is too high; (16) objects obstruct the restaurant corridors making them too narrow; and (17) the checkout aisles are not marked with the international accessibility symbol and lack the required free space underneath for wheelchair and scooter users to place their feet while paying. Dkt. 41 at 12–17. Betancourt claims he would return to the Luquillo McDonald's once these barriers are removed. *Id.* at 20.

## DISCUSSION

Congress passed the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title

III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005). To establish a prima facie case pursuant to Title III, a plaintiff "must demonstrate that (1) he or she has a qualified disability under the ADA, (2) the defendant operates a place of public accommodation, and (3) the plaintiff was discriminated against as a result of his or her disability." *Medina-Rodriguez v. Fernandez Bakery, Inc.*, 255 F. Supp. 3d 334, 341 (D.P.R. 2017) (citing cases). Disability discrimination includes "a failure to remove architectural barriers, and communication barriers that are structural in nature" 42 U.S.C. § 12182(b)(2)(A)(iv). In the case of "existing facilities," the plaintiff must show the removal of architectural barriers on defendant's property is "readily achievable," meaning it "is easily accomplishable and able to be carried out without much difficulty or expense." *Id.* Courts may consider the nature of the ADA violations in determining whether it is plausible that their removal is readily achievable. *See Marradi v. K&W Realty Inv. LLC*, 212 F. Supp. 3d 239, 246 (D. Mass. 2016).

The date of a facility's construction is a crucial piece of information when analyzing an ADA claim. Depending on the date the McDonald's was constructed, either the 1991 or 2010 ADA Guidelines apply. *See* ADAAG § 36.406(a). Neither party provides the date of construction, though Betancourt avers the property was built to be first occupied after January 26, 1993, yet both parties refer extensively and exclusively to the 2010 Guidelines. Thus, for the purposes of these motions, I will assume the 2010 Guidelines apply. Further, because neither party provides a date of construction, I cannot determine whether the Luquillo McDonald's is considered a new or existing facility under the ADA. *See* ADAAG §§ 36.401(a), 36.402(a). If the property were built to be first occupied after January 26, 1993, it would be considered a new construction. ADAAG § 36.401(a). If it were built before that date, it would be considered an existing facility. *Id.* As mentioned, for existing facilities, plaintiffs must show the modifications are "readily achievable." 42 U.S.C. § 12182(2)(A)(iv). When evaluating a motion for summary judgment, courts must "indulg[e] all reasonable inferences in [the opposing] party's favor." *Griggs-Ryan*, 904 F.2d at 115. Because Betancourt offers no evidence the Luquillo McDonald's was built to be first occupied after January

26, 1993, and is thus a new construction under the ADA, I will evaluate his motion for summary judgment assuming it is an existing facility under the ADA. However, to ultimately prevail on his claim, Betancourt must provide the date of construction for the Luquillo McDonald's. *See Disabled Americans for Equal Access, Inc. v. Compra Hosp. Pavia, Inc.*, 2004 WL 5568063 at *8 (D.P.R. Aug. 27, 2004) (finding failure to provide the date of construction precluded summary judgment as a matter of law but nevertheless analyzing the motion as though the public accommodation were an existing facility).

Before going further, I note Arcos Dorados raised two procedural issues with Betancourt's filings. I will address those concerns first.

### 1. Arcos Dorados's Procedural Arguments

#### A. *Timely Filing*

Arcos Dorados states Betancourt failed to timely file his opposition to summary judgment because it was due on August 11, 2022 and he did not file it until August 19, 2022. Dkt. 46 at 1. On August 11, Betancourt moved this court to extend the filing deadline for his opposition motion until August 19, Dkt. 36, and I granted his motion. Dkt. 40. Thus, I disregard this argument.

#### B. *Anti-Ferret Rule*

Arcos Dorados argues Betancourt violated the local anti-ferret rule, D.P.R.R 56, because he qualified or denied "some" of Arcos Dorados's proposed Statement of Uncontested Material Facts ("SUMF") without referencing an exhibit underlying his denial. Dkt. 46 at 4. Thus, it contends I should strike Betancourt's motion for summary judgment at Dkt. 41, and the supplementary exhibits at Dkt. 42, from the record. *Id.* Local Rule 56 requires a party opposing summary judgment to submit a "separate, short, and concise statement of material facts." D.P.R.R. 56(c). Each qualification or denial of a fact should be supported by a citation to a specific page or paragraph of the summary judgment record. *Id.*; D.P.R.R. 56(e). The anti-ferret rule aims to help the court adjudicate summary judgment motions without rummaging through the record to determine whether a given fact is genuinely in dispute. *CMI Cap. Mkt. Inv., LLC v. Gonzalez-Toro*,

520 F.3d 58, 62 (1st Cir. 2008). "[P]arties ignore the strictures of an 'anti-ferret' rule at their peril." *P.R. Am. Ins. Co. v. Rivera-Vazquez*, 603 F.3d 125, 131 (1st Cir. 2010).

Here, Betancourt denied or qualified many of the proposed facts in Arcos Dorados's SUMF. Dkt. 41-1 at 2–12. After Arcos Dorados raised its concerns, he then filed an amended opposition to Arcos Dorados's SUMF. Dkt. 49-2. Though Arcos Dorados argues "some" facts were originally qualified or denied without proper citation, it never specified which qualifications or denials were improperly cited. Because the anti-ferret rule exists to ease the court's burden, I will not attempt to determine which qualifications or denials Arcos Dorados believes are improperly cited. If Betancourt qualified or denied a fact without properly citing to the record, I will note that and proceed accordingly when evaluating his arguments below. Thus, I decline Arcos Dorados's request to strike Betancourt's filings at Docket 41 and 42.

## 2. Discrimination Against Betancourt

Because the parties agree that Betancourt has a qualifying disability and the Luquillo McDonald's is a public accommodation, Dkt. 46 at 18, the only question is whether Betancourt suffered discrimination. As mentioned, discrimination includes "a failure to remove architectural barriers, and communication barriers that are structural in nature." 42 U.S.C. § 12182(b)(2)(A)(iv). In existing facilities, removal must be "readily achievable." *Id.* I undertake this two-part inquiry below.

### A. Failure to Remove Architectural Barriers

Arcos Dorados contends Betancourt's claims are now moot because it has removed various architectural barriers and the Luquillo McDonald's now complies with the ADA. Dkt. 32. Betancourt argues the Luquillo McDonald's still violates the ADA despite the changes. Dkt. 41. Arcos Dorados responds by reiterating its original argument. Dkt. 46 at 18–22.

An ADA claim that was valid to begin with "can become moot because of a change in the fact situation underlying the dispute, making relief now pointless*." Horizon Bank & Tr. Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004). However, "[t]he burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" *Mangual v. Rotger-Sabat*,

317 F.3d 45, 60 (1st Cir. 2003) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)). It must be "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968). "To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *W. T. Grant Co.*, 345 U.S. at 633. With this in mind, I will analyze each of the barriers Betancourt cited, and Arcos Dorados's improvements, below.

### i.    *Access Ramp*

Betancourt argues the base of the accessible parking lot ramp has a steeper slope than that allowed by ADAAG §§ 405.2 and 405.3. Dkt. 41-1 at 16 ¶ 7. Arcos Dorados contends the ramp's slope complies with the Guidelines and that a divot previously at the base of the ramp was patched with asphalt. Dkt. 46-1 at 5. ADAAG § 405.2 requires ramp runs to have a slope no steeper than 1:12, while § 405.3 requires surfaces running perpendicular to ramps be no steeper than 1:48. A 1:12 slope means that a ramp rises 1 inch vertically for each 12 inches that it runs horizontally.[1] The ratio can also be determined by measuring the number of degrees by which a slope inclines. A 1:12 slope inclines by 4.76°.[2] A 1:48 slope inclines by 1.19°.[3] Betancourt provided a photo of a measuring device at the base of the ramp reading 5.55°. Dkt. 41-2 at 9. It is unclear whether this is a measurement of the area at the base of the ramp or the ramp itself. Still, this slope exceeds the maximum allowed for either surface under ADAAG §§ 405.2 and 405.3. Arcos Dorados responds by citing to its expert's report, which asserts there is a smooth transition at the base of the ramp but provides no evidence to support this claim. Dkt. 46 at 8; Dkt. 32-2 at 6. Because Arcos Dorados has not shown the ramp complies with ADAAG §§ 405.2 and 405.3, I reject its mootness argument with respect to this structure.

---

[1] *Ramp Calculator*, OMNI CALCULATOR, https://www.omnicalculator.com/construction/ramp-slope#how-do-you-calculate-the-slope-of-a-ramp (last visited Dec. 12, 2022).
[2] *Id.*
[3] *Id.*

### ii.    *Entrance Area*

Betancourt argues the main entrance lacks sufficient clear floor space for a wheelchair or scooter user to safely maneuver while opening the door because a trash can reduces the floor space to 25 inches and the door, when opened, further reduces the space to 21 inches. Dkt. 41 at 13 (citing Dkt. 41-2 at 10–11). Arcos Dorados denies this and cites its expert report as supporting evidence. Dkt. 46 at 9. However, the report does not address this allegation nor provide a measurement of the area. Walking surfaces must have a clear width of at least 36 inches. ADAAG § 403.5.1. Though Betancourt's measurements are correct, it is unclear how either the door or the trashcan would prevent him from entering the restaurant as he contends. From the perspective of the parking lot, a person using a wheelchair or scooter would approach the door by heading to the base of the previously discussed ramp, turning right, and moving up the ramp. *See* Dkt. 41-2 at 9. From this direction, they would not pass the open door, nor the trashcan located to the right of the door. *Id.* Thus, it is unclear how either of these would prevent such a person from entering the restaurant. Because there is no apparent reason why a wheelchair or scooter user would need or want to pass through the area between the trash can and curb on the other side of the entrance to the restaurant, this area appears more appropriately evaluated as a doorway under ADAAG § 404. Depending on the door's features, the area would then need to meet the requirements in figures 404.2.2.2 (h) or (i). Neither Betancourt, nor Arcos Dorados have provided evidence to evaluate which criteria to use or whether the doorway meets either criterion. Because Arcos Dorado has not provided evidence that the entrance complies with the ADA's doorway requirements, I reject its mootness argument with respect to this area.

### iii.    *Bathroom Signs*

Betancourt argues both bathroom signs display the international accessibility symbol, but neither facility complies with the ADAAG. Dkt. 41 at 13. Arcos Dorados responds that only one bathroom sign displays the international accessibility symbol. Dkt. 46 at 9. The other, it contends, is a women's bathroom. *Id.* Betancourt is correct that both bathroom signs display the symbol. *Compare* ADAAG fig. 703.7.2.1, *with* Dkt. 41-2 at 12. As discussed below, only one bathroom

needs to satisfy the ADAAG for the Luquillo McDonald's to comply with the ADA. However, as is also discussed below, Arcos Dorados has not shown either bathroom complies with the ADAAG. Because Arcos Dorados posted bathroom signs with the international accessibility symbol, while Betancourt offered evidence neither facility complies with the ADAAG, I reject Arcos Dorados's mootness argument regarding the bathroom signs.

### iv.    Height of unisex bathroom doorhandle

Betancourt argues the operable part of the bathroom doorhandle violates the ADAAG because it is 52 inches above the ground. Dkt. 41 at 13. Arcos Dorados denies this citing its expert report, which says the door complies with ADA Guidelines without offering evidence of its height. Dkt. 32-2 at 7, 20. The ADA Guidelines impose a 48-inch height limit for doorhandles. ADAAG § 404.2.7. Betancourt's evidence shows the doorhandle runs from 46 to 52 inches off the ground. Because Arcos Dorados has not shown the bathroom doorhandle complies with ADAAG § 404.2.7, I reject its mootness argument regarding this fixture.

### v.    Area Next to Unisex Bathroom Door

Betancourt argues the space next to the unisex bathroom door measures 41.5 inches, which violates ADAAG § 404.2.4.2 fig. h. Dkt. 41 at 14. Arcos Dorados responds that, as required by ADAAG § 603.2, the bathroom has a clear floor space 60 inches in diameter, which would allow a person in a wheelchair to use different fixtures and turn around. Dkt. 32-2 at 7. This contention is supported by an affidavit from a Mechanical Engineer, Jorge Gerardo Hurtado Arroyo. *Id.* at 26. However, even if the bathroom has such space, that does not render the doorway accessible. "At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site." ADAAG § 206.2.2. "Entrance doors, doorways, and gates shall comply with 404 and shall be on an accessible route complying with 402." ADAAG § 206.4. ADAAG § 404 requires doors comply with specifications outlined in various diagrams. The unisex bathroom door matches the door layout depicted in ADAAG § 404.2.4.2 fig. h. *See* Dkt. 41-2 at 13, 15. Per that layout, the maneuvering space next to the door

must measure 48 inches. ADAAG § 404.2.4.2 fig. h. Because the maneuvering space measures just 41.5 inches, I reject Arcos Dorados's mootness argument regarding this area.

### vi.       *Height of Mirror in Unisex Bathroom*

Betancourt argues the reflecting surface of the unisex bathroom mirror is 43 inches above the floor. Dkt. 41 at 14. Arcos Dorados contends the mirror complies with ADA Guidelines. Dkt. 46 at 11. The reflecting surface of mirrors installed above sinks must be no more than 40 inches above the floor. ADAAG § 603.3. Both Betancourt and Arcos Dorados submitted photos showing the mirror's reflective surface begins 43 inches off the floor. Dkts. 32-2 at 21, 41-2 at 16. Thus, I reject Arcos Dorados's mootness argument regarding the unisex bathroom mirror.

### vii.      *Side Grab Bar in Unisex Bathroom Detaching from Wall*

Betancourt argues the side grab bar in the unisex bathroom violates ADAAG §§ 609.5–609.8 because it is deteriorating and detaching from the wall. Dkt. 41 at 14–15. Arcos Dorados denies this. Dkt. 46 at 12. ADAAG § 609.5 requires grab bars be free of sharp or abrasive elements and have rounded edges. ADAAG § 609.6 states grab bars shall not rotate within their fittings. ADAAG § 609.7 bans grab bars from obstructing clear floor space. ADAAG § 609.8 requires grab bars to support a horizontal or vertical force of 250 pounds. Arcos Dorados submitted one picture of the grab bar in which it appears securely fasted into the wall. Dkt. 32-2 at 22. However, Betancourt submitted two pictures in which the grab bar appears dislodged from one of its connections to the wall. Dkt. 41-2 at 17–18. In those photos, sharp metal edges are protruding from the wall where the bar has detached. From the photos provided, it is impossible to determine if the side grab bar violates any other ADA Guidelines. Nevertheless, because Arcos Dorados has not shown that the grab bar complies with ADAAG § 609.5, and there is evidence it may not, I reject Arcos Dorados's mootness argument regarding the condition of the side grab bar in the unisex bathroom.

### viii.     *Side Grab Bar in Unisex Bathroom More Than 12 Inches from Back Wall*

Betancourt argues the side grab bar in the unisex bathroom is more than 12 inches from the back wall. Dkt. 41 at 15. Arcos Dorados denies this and cites its expert report which provides no

evidence supporting its contention. Dkt. 46 at 12. A side wall grab bar must be 12 inches maximum from the back wall. ADAAG § 604.5.1. Betancourt's evidence shows the side grab bar begins 13 inches from the back wall. Dkt. 41-2 at 18. Thus, I reject Arcos Dorados's mootness argument regarding the side grab bar location in the unisex bathroom.

### ix.      *Space in Front of Unisex Bathroom Toilet*

Betancourt argues the space between the unisex bathroom toilet and the front wall violates ADAAG § 305.3 because it is 41 inches and a trash can in this area further reduces this space to 24 inches. Dkt. 41 at 15. Arcos Dorados contends the bathroom, which is 14 feet and 4 inches by 5 feet and 5 inches complies with ADAAG §§ 603.2.1, 603.2.2, and 603.2.3. Dkt. 46 at 12 (citing Dkt. 32-2 at 7). ADAAG § 305.3 applies where required by Chapter 2 of the ADA Guidelines or where referenced by a requirement elsewhere in the ADA Guidelines. ADAAG § 301.1. Chapter 2 states toilet rooms must comply with §§ 213 and 603 of the Guidelines. ADAAG §§ 213.1–213.2. Section 603 only references compliance with § 305.3 as grounds for a possible exception, irrelevant here, to the requirements imposed by § 603. Because ADAAG § 305.3 does not apply to the space in front of the unisex bathroom toilet, Arcos Dorados motion for summary judgment is **GRANTED** as to this claim and Betancourt's § 305.3 claim regarding this area is **DISMISSED**.

### x.      *Space Adjacent to Unisex Bathroom Toilet*

Betancourt argues the free space on the floor in the "unisex" bathroom is less than 60 inches in diameter, as required by ADAAG § 304.3.1, because a urinal and baby changing station limit this space. Dkt. 41 at 15. Rooms must have either a circular or t-shaped turning space. ADAAG § 304.3. The circular turning space must be at least 60 inches in diameter. ADAAG § 304.3.1. Arcos Dorados asserts there is a circular turning space at least 60 inches in diameter. Dkt. 32-2 at 7. Betancourt's evidence shows the space is approximately 48 inches in diameter when the nearby baby changing table is open and the entrance to this space is limited to approximately the same width by the urinal. Dkt 41-2 at 21–22. Because Arcos Dorados has not shown the space is 60 inches in diameter, and there is evidence suggesting otherwise, I reject its mootness argument regarding the space adjacent to the unisex bathroom toilet.

### xi.     *The Women's Bathroom*

Betancourt mentions various barriers in the women's bathroom. Dkt. 41 at 16–17. Arcos Dorados argues the women's bathroom is not designated for people with disabilities and only one such bathroom is required to make the Luquillo McDonald's an ADA-compliant facility. Dkt. 46 at 12. Where multiple single user toilet rooms are clustered at a single location, no more than 50 percent of the single user toilet rooms for each use at each cluster are required to comply with the ADA Guidelines. ADAAG § 213.2 ¶ 4. Here, there are two such facilities and Arcos Dorados argues the unisex bathroom complies with the ADA Guidelines. However, as discussed, the sign on the women's bathroom door displays the international accessibility symbol. *Compare* ADAAG fig. 703.7.2.1, *with* Dkt. 41-2 at 12. Because Arcos Dorados is not required to make both bathrooms accessible, and has clearly stated its intention to only modify the unisex bathroom, I will not analyze Betancourt's arguments regarding the women's bathroom. However, because the women's bathroom sign displays the international accessibility symbol, though Arcos Dorados admits that bathroom is not accessible, I reject Arcos Dorados's mootness argument regarding the women's bathroom.

### xii.    *Width of Restaurant Corridors*

Betancourt argues a walkway near an entrance to the Luquillo McDonald's violates ADAAG § 403.5.1 because objects obstruct the path, reducing its width to 22 inches. Dkt. 41 at 17. Arcos Dorados denies Betancourt's claim citing an irrelevant portion of its expert report. Dkt. 46 at 14. Walking surfaces must be at least 36 inches wide. ADAAG § 403.5.1. Betancourt's evidence shows the hallway is obstructed by two objects that appear to advertise the restaurant's various food items, reducing its width to 22 inches. Dkt. 41-2 at 30. Thus, I reject Arcos Dorados's mootness argument regarding the width of the restaurant corridors.

### xiii.   *The Check-out Counter*

Betancourt has two issues with the checkout counter. First, he contends neither check-out stand is marked as accessible, violating ADAAG § 216.11. Dkt. 41 at 17. Second, he argues the counter is designed for a frontal approach, but lacks a free space between the ground and the

counter allowing people in wheelchairs or scooters to place their knees and feet in front of the counter, violating ADAAG § 904.4.2. *Id.* Arcos Dorados denies both of Betancourt's claims citing an irrelevant portion of its expert report. Dkt. 46 at 14.

When more than one check-out aisle is provided, check-out aisles complying with 904.3 shall be identified by the international accessibility symbol. ADAAG § 216.11. However, where all check-out aisles serving a single function comply with 904.3, signs complying with 703.7.2.1 are not required. *Id.* Betancourt's evidence shows neither counter is marked as accessible, Dkt. 41-2 at 31, and Arcos Dorados offered no contrary evidence. Thus, I reject Arcos Dorados's mootness argument regarding the check-out counter signs.

When a check-out counter is designed for a forward approach, there must be knee and toe space under the counter complying with ADA Guideline 306. ADAAG § 904.4.2. ADAAG § 306 requires toe clearance be at least 30 inches wide with a minimum depth of 17 inches and a maximum of 25 inches. ADAAG § 306.2. Further, it requires knee clearance between 9 and 27 inches above the floor and 30 inches wide. ADAAG § 306.2. At 9 inches from the ground, the depth may range from 11 to 25 inches. Between 9 inches and 27 inches above the ground, the knee clearance may be reduced by 1 inch in depth for each 6 inches in height. Betancourt's evidence shows a counter but does not provide measurements sufficient to determine whether the ADA Guidelines are met. Dkts. 41-2 at 31, 42-1 at 6. Nevertheless, because Arcos Dorados provides no affirmative evidence showing the ADA Guidelines are met, I reject its mootness argument regarding the check-out counter.

In conclusion, Betancourt's § 305.3 claim regarding the unisex bathroom toilet is **DISMISSED.** Nevertheless, Arcos Dorados has not shown that the remainder of Betancourt's claims are moot because it has not satisfied its heavy burden of showing that past violations have been remedied and are unlikely to recur. On the contrary, Betancourt's evidence shows many of the violations are ongoing. Betancourt has thus shown that Arcos Dorados failed to remove architectural barriers.

**B.  Whether Removal is Readily Achievable**

***i.        Arcos Dorados's Motion for Summary Judgment***

Arcos Dorados argues it is nevertheless entitled to summary judgment because Betancourt failed to show his requested modifications are readily achievable. Dkt. 46 at 18 (citing *Colo. Cross Disability Coal. v. Hermanson Fam. Ltd. P'ship*, 264 F.3d 999, 1005–1006 (10th Cir. 2001)). The ADA requires defendants to remove architectural and structural barriers which block access to their facilities by persons with disabilities so long as "such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA defines the term "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9). Factors bearing on whether barrier removal is readily achievable include:

> (A) the nature and cost of the action needed . . . ;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.
>
> (E) the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

*Id.*; 28 C.F.R. § 36.104. First, the plaintiff "must initially present evidence tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances. If Plaintiff does so, Defendant then bears the ultimate burden of persuasion that barrier removal is not readily achievable . . . ." *Colo. Cross Disability Coal.*, 264 F.3d at 1002–03 (citing *Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 632 (D. Md. 2002); *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001)). The "readily achievable" standard is "a fact-

intensive inquiry that will infrequently be decided on summary judgment." *Theodore v. Lowell Gen. Hosp.*, 2017 WL 1164486, at *4 (D. Mass. Mar. 28, 2017) (citing *Access Now*, 161 F. Supp. 2d at 1371).

Although every circuit applies a burden-shifting framework when addressing claims for removal of architectural barriers, the initial burden placed on plaintiffs varies. *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038 (9th Cir. 2020). When evaluating a motion for judgment as a matter of law after a trial, the Tenth Circuit required plaintiffs to provide "precise cost estimates" and "a specific design" regarding their proposed accommodation, *Colo. Cross Disability Coal.*, 264 F.3d at 1009. At summary judgment, the Second Circuit merely requires plaintiffs to "articulate a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed its benefits,'" *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 373 (2d Cir. 2008) (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). The First Circuit has not directly articulated a plaintiff's burden at summary judgment. This court has previously looked to the Tenth Circuit standard finding, "[p]laintiffs must consider the factors identified in § 12181(9) and proffer evidence, including expert testimony, as to the ease and inexpensiveness of their proposed method of barrier removal." *Disabled Americans for Equal Access*, 2004 WL 5568063 (D.P.R. Aug. 27, 2004) (quoting *Colo. Cross Disability Coal*, 264 F.3d at 1005). However, it did not require precise cost estimates or a specific design at the summary judgment stage. *Id.* at 10–12. Other First Circuit courts have articulated a standard closer to that used by the Second Circuit, holding "a plaintiff should at a minimum provide a general removal plan and discuss its feasibility, bearing in mind both structural concerns and estimated costs." *Theodore*, 2017 WL 1164486, at *4 (quoting *Massachusetts v. E*Trade Access, Inc.*, 464 F. Supp. 2d 52, 61 (D. Mass. 2006)).

Using the Tenth Circuit standard, Arcos Dorados argues Betancourt did not present a specific design that is readily achievable. Dkt. 32 at 14–16; Dkt. 46 at 18–19. Betancourt responds that Arcos Dorados already hired an expert to bring the Luquillo McDonalds into compliance with the ADA and it spent $11,565.80, approximately five times the amount spent here, modifying

another one of its restaurants. Dkt. 41 at 22. He further posits that McDonald's is one of the largest companies in the United States and allowing them to skirt ADA regulations would send the wrong message to smaller business. *Id.* at 23. Nevertheless, Arcos Dorados is correct that Betancourt has not presented a specific design or evidence allowing this court to evaluate its feasibility as required by the Tenth Circuit.

However, I reject Arcos Dorados's argument that it is entitled to summary judgment under the Tenth Circuit standard laid out in *Colo. Cross Disability Coal*. There, the court granted judgment as a matter of law after a full trial in which it found the plaintiff's two witnesses failed to demonstrate that installing a ramp was readily achievable. *Colo. Cross Disability Coal*, 264 F.3d at 1007–1009. The court found the plaintiff failed to present specific designs, provide cost estimates, or establish that the city would approve a modification to a historic structure. *Id.* Here, Betancourt may still present designs and cost estimates at trial. *See Theodore*, 2017 WL 1164486, at *4 (finding plaintiffs failed to present a concrete description of the work or a cost estimate but denying summary judgment because they could still do so at trial). Further, there is no indication that the Luquillo McDonald's occupies a historic building and Arcos Dorados offers no other reason why it might be denied necessary permits. Additionally, by requiring specific designs, the *Colo. Cross Disability Coal* court held plaintiffs to a higher standard than that imposed by other courts in this circuit at the summary judgment stage. *See Disabled Americans for Equal Access*, 2004 WL 5568063 at 8; *Theodore*, 2017 WL 1164486, at *4 (quoting *E*Trade Access, Inc.*, 464 F. Supp. 2d 52, 61) (finding information asymmetry between plaintiff and facility-owner warranted requiring a plaintiff to "at a minimum provide a general removal plan and discuss its feasibility, bearing in mind both structural concerns and estimated costs").

Using the Tenth Circuit framework at the summary judgment stage, this court previously denied summary judgment to a defendant despite the plaintiff's failure to provide sufficient evidence that compliance with the ADA was readily achievable as a matter of law. *See Disabled Americans for Equal Access*, 2004 WL 5568063 at *11–12. This case closely resembles *Disabled Americans for Equal Access*. There, a defendant hospital argued a plaintiff's claims were moot,

but the court found otherwise. *Id.* at 5–6. The plaintiff presented an expert report detailing the facility's ADA violations and requested modifications. *Id.* at 8. However, the plaintiff failed to provide the date of the facility's construction, information regarding the defendant's finances, or cost estimates for the proposed improvements. *Id.* Here, Betancourt presented an expert report documenting violations and outlined requested modifications. *See* Dkt. 41-2 (expert report); Dkt. 11 at 9–14 (requested modifications). However, he failed to provide the date the Luquillo McDonald's was constructed, information regarding Arcos Dorados's finances, or cost estimates for the proposed improvements.

Similarly, when confronted with an expert report detailing ADA violations in hospital bedrooms and broad proposed solutions lacking cost estimates, a court in this circuit denied summary judgment for the hospital but warned plaintiffs that, to prevail at trial, they must, "identify specific barriers that they seek to have removed and to provide as much information as possible concerning the potential costs and disruption that the hospital might incur." *Theodore*, 2017 WL 1164486, at *4. That holding squarely applies here. Thus, like the plaintiffs in *Disabled Americans for Equal Access* and *Theodore*, Betancourt has presented sufficient evidence to defeat Arcos Dorados's motion for summary judgment. Accordingly, Arcos Dorados's motion for summary judgment is **DENIED**.

### ii.     *Betancourt's Motion for Summary Judgment*

However, Betancourt is not entitled to summary judgment either. To prevail on summary judgment, Betancourt needed to provide the information courts in this circuit have previously deemed mandatory. He should have provided the date of the facility's construction and the date of any modifications. *Disabled Americans for Equal* Access, 2004 WL 5568063 at *8. If that information rendered the Luquillo McDonald's an existing facility under the ADA, Betancourt also needed to provide information regarding Arcos Dorados's finances. *Id.* Further he needed to identify specific barriers he would like removed and furnish cost estimates, including any

disruption to the business, for the proposed improvements. *Theodore*, 2017 WL 1164486, at \*4. Similarly, he must provide this information to prevail at trial.

Though Betancourt satisfied his initial burden by submitting an expert report identifying ADA violations and proposing solutions to the barriers identified, he has not provided sufficient information to demonstrate that his requested modifications are readily achievable. He proposed general solutions including moving handrails, lowering signs, reconfiguring the counter and bathroom, and repainting the parking lot. Dkt. 11 at 9–14. He did not account for structural and estimated costs. Instead, he asserted that Arcos Dorados spent over $11,000 adapting another of its restaurants compared with approximately $2,500 spent modifying this restaurant. That data point offers little assistance where, as here, there is no information regarding how much the remaining modifications to the Luquillo McDonald's might cost. Thus, despite presenting enough evidence to defeat Arcos Dorados's motion for summary judgment, Betancourt failed to present sufficient evidence to obtain summary judgment in his favor under the standard used by courts in this circuit.

Further, Betancourt is not entitled to summary judgment under the Second Circuit standard, articulated in *Borkowski*, that he urges this court to follow. This standard appears similar to the burden imposed in *Disabled Americans for Equal Access* and *Theodore*. In *Borkowski*, a library teacher struggled to control her class due to neurological difficulties and was subsequently denied tenure. *Borkowski*, 63 F.3d at 134. She argued she could perform the job if provided with a teacher's aide. *Id.* at 140. The *Borkowski* court concluded the teacher met her initial burden by proposing the teacher's aide solution and noted that the school district did not show this was a hardship because it failed to provide evidence regarding the cost of an aide or the impact on its overall budget. *Id.* at 142–43. Notably however, the *Borkowski* court still did not grant summary

judgment in favor of the teacher. *Id.* at 143–44 (vacating summary judgment in favor of school district and remanding for further proceedings). Applying the *Borkowski* standard in the structural modification context, the *Roberts* court found the plaintiffs met their burden by producing an architect's report suggesting reasonably priced modifications that would render a typical hotel unit wheelchair accessible. *Roberts*, 542 F.3d at 375 n. 8. Likewise, the plaintiffs satisfied their burden that modifications to a pool were readily achievable by presenting plans that would permit a facially cost-effective wheelchair entrance to at least one pool area. *Id.* at 377–78. Here, Betancourt resembles the teacher in *Burkoski*, not the plaintiffs in *Roberts*, because, as discussed above, he has identified potential solutions to the barriers he identified, but has not produced sufficient evidence enabling the court to evaluate whether those solutions are cost effective.

Betancourt's other argument that McDonald's is one of the largest companies in the United States is of little relevance because Betancourt is suing Arcos Dorados, not McDonalds, and Arcos Dorados will thus be financially liable for implementing any ordered modifications. The court thus needs evidence of Arcos Dorados's finances to determine whether the alterations are feasible. *See Theodore*, 2017 WL 1164486, at *2 (discussing hospital owner's assets and hospital's profit before evaluating feasibility). Though Arcos Dorados likely knows more than Betancourt about its finances and the pitfalls of modifying the Luquillo McDonald's, the Second Circuit would still require Betancourt to furnish a general removal plan and discussion of feasibility, including an analysis of whether the costs outweigh the benefits. *Borkowski*, 63 F.3d at 139. Given the information asymmetry, his cost estimates need not be exact. Instead, "[t]his burden may be met with cost estimates that are facially plausible, without reference to design details, and are such that the defendant can assess its feasibility and cost." *Roberts*, 542 F.3d at 372. As discussed above, that is consistent with what courts in this circuit have previously required.

In review, Betancourt submitted an expert report identifying barriers and proposed general solutions without cost estimates. He further argued his proposed improvements are readily achievable as a matter of law by asserting Arcos Dorados can afford to bring the Luquillo McDonald's into compliance with the ADA and ordering them to do so will send a positive message to other businesses. By presenting an expert report outlining ADA violations and offering potential solutions, Betancourt has done what First Circuit courts have required of ADA plaintiffs seeking to defeat summary judgment motions. However, he is not entitled to summary judgment in his favor because he failed to show removing the barriers he identified is readily achievable as a matter of law. Still, he may prevail at trial by presenting the additional evidence outlined above. Alternatively, as previously discussed, he may also bypass this requirement if he establishes that the Luquillo McDonald's qualifies as a new construction under the ADA. Because he has thus far made neither showing, Betancourt's motion for summary judgment is **DENIED**.

## CONCLUSION

For the reasons explained above, Arcos Dorados's motion for summary judgment is **GRANTED IN PART.** It is **GRANTED** as to Betancourt's claim regarding the area in front of the unisex bathroom toilet. Betancourt's ADAAG § 305.3 claim regarding this area is **DISMISSED.** Arcos Dorados failed to show Betancourt's claims were moot. Because Betancourt may still present evidence at trial that alterations are readily achievable, or that the Luquillo McDonald's qualifies as a new construction under the ADA, Arcos Dorados's motion for summary judgment is **DENIED**.

As discussed, Betancourt has failed to show that modifying the Luquillo McDonald's is readily achievable and failed to establish the date the facility was constructed. Further, he failed to establish the absence of a genuine controversy of material facts regarding the alleged ADA violations in the entrance area and at the check-out counter. Thus, Betancourt's motion for

summary judgment is **DENIED** and his request for a permanent injunction ordering Arcos Dorados

to modify the Luquillo McDonald's is **DENIED**.

       **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of January 2023.

                    **S/ Bruce J. McGiverin**
                    BRUCE J. McGIVERIN
                    United States Magistrate Judge