## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **FAUSTINO XAVIER BETANCOURT-COLON**, <br>     Plaintiff, <br><br> v. <br><br> **ARCOS DORADOS PUERTO RICO, LLC,** *et al.*, <br>     Defendants. | Civil No. 21-1311 (BJM) |

## ORDER

Faustino Xavier Betancourt-Colon ("Betancourt") sued Arcos Dorados Puerto Rico, LLC ("Arcos Dorados PR") and an unnamed defendant alleging unlawful discrimination in a place of public accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Dkt. 11-1. Betancourt now moves this court to take judicial notice of financial documents filed by Arcos Dorados PR's purported parent company, Arcos Dorados Holdings Inc. ("Arcos Dorados Holdings"). Dkt. 72. Arcos Dorados PR opposed and simultaneously filed a motion in limine to exclude testimony from Betancourt's purported expert, Gabriel Santana Concepción ("Santana"). Dkt. 77. Betancourt opposed. Dkt. 80. This case is before me by consent of the parties. Dkts. 18, 19.

Though I addressed the facts in detail at summary judgment, Dkt. 52, I briefly review them here. In April 2021, Betancourt, who is disabled, visited a McDonald's restaurant Arcos Dorados PR owns in Luquillo, Puerto Rico. *Id.* at 2. Though he would like to return, he encountered various barriers in the restaurant's parking spaces, entrance ramp, front door, bathrooms, corridors, and check-out counter. *Id.* Arcos Dorados PR claimed it subsequently modified the Luquillo McDonald's to comply with the ADA. *Id.* Betancourt hired Santana to evaluate this claim and Santana did so by visiting the Luquillo McDonald's in April 2022. *Id.* at 2–3. During this visit,

Santana reported the Luquillo McDonald's had not adequately addressed Betancourt's concerns and identified additional barriers at the restaurant that allegedly violated the ADA. *Id.* at 3.

I begin with Arcos Dorados PR's motion to exclude Santana's written or oral testimony. Arcos Dorados PR worries Santana will inappropriately testify as an expert on Betancourt's behalf and seeks exclusion on that ground. Dkt. 77 at 5–12. Betancourt responds that such a motion is speculative because he did not state Santana would testify in the parties' joint proposed pretrial order and does not currently aver that Santana will testify. Dkt. 80 at 2. I agree.

A party must name his witnesses and identify documents he expects to use at trial 30 days before that trial unless the court orders otherwise. Fed. R. Civ. P. 26(a)(3). However, this requirement does not apply to witnesses used solely for impeachment. *Id.* Further, a party must name experts 90 days before trial or, if used solely for rebuttal, 30 days after an opposing party's disclosure of the evidence to be rebutted. Fed. R. Civ. P. 26(a)(2)(D). Here, the parties' proposed order does not identify Santana as a witness, expert or otherwise, who Betancourt intends to call at trial. *See* Dkt. 63 at 33, 35. Further, it does not mention his unsworn declaration, which Betancourt submitted with his summary judgment motion, as a document Betancourt intends to introduce into evidence. *Id.* at 34–35. And after the court gave both parties until May 6, 2022 to submit expert reports, Dkt. 25, Betancourt never submitted one for Santana.

Despite Santana's absence from these pretrial disclosures, Betancourt may still offer him as an impeachment witness under Fed. R. Civ. P. Rule 26. And under this Circuit's caselaw, Betancourt may still call Santana as a witness if Santana's omission from pretrial disclosures was harmless. *See Burnett v. Ocean Properties, Ltd.*, 987 F.3d 57, 73 (1st Cir. 2021). I note Betancourt has not indicated he will offer Santana as an expert witness or even at all. Accordingly, I decline to examine whether he would qualify as an expert or whether his testimony would be harmless

given his omission from the parties' joint proposed pretrial order. *See Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 263 (1st Cir. 1993) ("[M]ost district judges are very cautious about making a definitive ruling *in limine* that evidence will not be received at trial. Trial judges know better than most that many issues are best resolved in context and only when finally necessary.") Accordingly, Arcos Dorados PR's motion to exclude Santana's testimony is **DENIED without prejudice.**

I turn to Betancourt's motion requesting judicial notice. Betancourt requests I take judicial notice of three documents Arcos Dorados Holdings filed with the Securities and Exchange Commission ("SEC"): (1) its 2022 Form 20-F; (2) Exhibit 4.34 to that Form 20-F, a Subsidiary Joinder Agreement dated October 27, 2021; and (3) its Form 6-K filed in May 2023. Dkt. 72. He also requests I take judicial notice of various facts within those documents. *Id.* Arcos Dorados PR argues these documents are irrelevant because this court found Betancourt's attorney stated in a different case that Arcos Dorados PR's financial capacity was not disputed and because the documents were produced by an unrelated corporation, not Arcos Dorados PR. Dkt. 77 at 12–15.

I first note that "courts do not take judicial notice of documents, they take judicial notice of facts." *Abu-Joudeh v. Schneider*, 954 F.3d 842, 848 (6th Cir. 2020). Specifically, courts may take judicial notice of "a fact that is not subject to reasonable dispute" either because such a fact "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, I turn to Betancourt's request I take judicial notice of various statements within his proffered documents.

He first asks I take judicial notice of various statements in Arcos Dorados Holdings's 2022 Form 20-F in which the company states it settled lawsuits with its Puerto Rico franchisees and subsequently acquired their restaurants. Dkt. 72 at 1–2 (citing Dkt. 72-1 at 106, 200). Pointing to an exhibit within that filing, he also requests judicial notice that Arcos Dorados PR became an

additional guarantor under an Amended and Restated Credit Agreement between Arcos Dorados Holdings and JPMorgan Chase Bank, N.A. *Id.* at 2 (citing Dkt. 72-1; *see also* Dkt. 72.1 at 150). He argues this demonstrates Arcos Dorados PR is a subsidiary of Arcos Dorados Holdings. *Id.* n. 4. Lastly, he requests judicial notice of statements in Arcos Dorados Holdings's May 2023 Form 6-K regarding the company's 2022 earnings. *Id.* at 2–3.

"[I]n securities fraud actions, a court may take judicial notice of the content of documents filed with the SEC." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1297 (11th Cir. 2011) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); Fed. R. Evid. 201(b)(2)). However, as *FindWhat Investor* makes clear, statements in a party's SEC filings are hardly beyond dispute. *See* 658 F.3d at 1298 (finding "portion[s] of the Form 10–K could be considered materially misleading."). In other words, the *FindWhat Investor* court took judicial notice that a party made certain representations in its SEC filings where a plaintiff alleged those statements were false. Of course, the *FindWhat Investor* court did not accept the party's statements in its SEC filings as true. *Id.* Similarly, where a company filed its annual report with the SEC, "[t]he public filing of this document with a regulatory agency [made] it a proper subject of judicial notice, at least with regard to the fact that it contain[ed] certain information, though not as to the truth of its contents." *OrbusNeich Med. Co., BVI v. Bos. Sci. Corp.*, 694 F. Supp. 2d 106, 111 (D. Mass. 2010) (citing *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)). Accordingly, I can only take judicial notice that Arcos Dorados Holdings made the various representations Betancourt cites in its SEC filings. However, I cannot accept those statements as true.

Arcos Dorados PR argues I should not take judicial notice of Arcos Dorados Holdings's statements in its SEC filings for two reasons. First, it notes Betancourt's attorney said Arcos

Dorados PR's financial capacity was undisputed while representing a different party in a different lawsuit. Then, it says the statements are irrelevant because they were made by an unrelated party.

Arcos Dorados PR cites no authority for its proposition that Betancourt is bound by his attorney's statement in another case. A court order memorialized the statement by noting the plaintiff requested financial information from Arcos Dorados PR "which would appear to be irrelevant as the plaintiff admitted that the defendant's financial capacity is not in dispute." Dkt. 77 at 14–15 (citing *Rodríguez-Burgos v. Arcos Dorados P.R., LLC*, 19-cv-2089-SCC (D.P.R. Sep. 11, 2023), ECF No. 168). Arcos Dorados PR fails to explain how that concession applies to this case. And "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

Even assuming Arcos Dorados PR did not waive this argument, it is meritless. At best, Arcos Dorados PR argues Betancourt is judicially estopped from taking a different position than Rodriguez-Burgos because both parties hired the same lawyer. However, "judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003). Thus, "a party against whom judicial estoppel is invoked, typically, must be the same party who made the prior inconsistent representation." *Knowlton v. Shaw*, 704 F.3d 1, 10 (1st Cir. 2013). Assuming Betancourt's position is inconsistent with Rodriguez-Burgos's representation, which Arcos Dorados PR has not established, "[c]ourts normally refuse to apply judicial estoppel to one party based on the representations of an unrelated party." *Perry v. Blum*, 629 F.3d 1, 9 (1st Cir. 2010) (collecting cases). I note "courts sometimes have allowed judicial estoppel when the estopped party was responsible in fact for the earlier representation . . . or when the estopped party was the assignee of a litigation claim or assumed

the original party's role." *Id.* (citations omitted). However, Arcos Dorados PR does not contend either situation applies here. Accordingly, its argument does not warrant excluding Betancourt's proffered evidence.

As mentioned, Arcos Dorados PR also argues the financial documents are irrelevant or unfairly prejudicial because they were produced by Arcos Dorados Holdings, an unrelated corporation. Dkt. 77 at 13–15 (citing Fed. R. Evid. Rules 401 and 403). It does not dispute the accuracy of these documents. Betancourt argues the documents are relevant because they show Arcos Dorados Holdings is the parent company of Arcos Dorados PR. Dkt. 80 at 3.

Before taking judicial notice of facts, courts examine whether they are relevant. *See United States v. Carrasco-Castillo*, 427 F. Supp. 3d 266, 271 (D.P.R. 2019) ("Taking notice of facts that are irrelevant, overly prejudicial, or collateral is contrary to the policies underlying Rule 201's judicial notice provisions."). "Evidence may be relevant under Rule 401's definition, even if it fails to prove or disprove the fact at issue—whether taken alone or in combination with all other helpful evidence on that issue." *United States v. Guzmán-Montañez*, 756 F.3d 1, 7 (1st Cir. 2014) (internal quotation marks omitted). Betancourt's proffered facts satisfy this low bar.

As discussed, Betancourt alleges barriers in the Luquillo McDonald's, a public accommodation owned by Arcos Dorados PR, violated the ADA, which bars discrimination in such places. The ADA defines discrimination in part as "a failure to remove architectural barriers, and communication barriers that are structural in nature." 42 U.S.C. § 12182(b)(2)(A)(iv). In "existing facilities," an ADA plaintiff must show the removal of architectural barriers on a defendant's property is "readily achievable," meaning it "is easily accomplishable and able to be carried out without much difficulty or expense." *Id.* When analyzing whether removal is "readily achievable," courts examine, among other things, "the type of operation or operations of any parent

corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity." 28 C.F.R. § 36.104. Accordingly, whether Arcos Dorados Holdings is the parent corporation of Arcos Dorados PR is relevant to Betancourt's claim that bringing the Luquillo McDonald's into compliance with the ADA is readily achievable. And the former entity's statements to the SEC on this disputed fact may make it "more probable or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. Accordingly, those statements are relevant as defined by Fed. R. Evid. Rule 401.

Turning to Fed. R. Evid. Rule 403, Arcos Dorados PR argues taking judicial notice of these statements would create unfair prejudice because they were made by an unrelated corporation. Dkt. 77 at 15. As discussed, Betancourt disputes that Arcos Dorados Holdings is unrelated to Arcos Dorados PR. Next, rehashing its estoppel argument, Arcos Dorados PR also argues these documents would waste time because Betancourt's attorney stated in another case that his client there did not dispute Arcos Dorados PR's financial capacity. *Id.* As discussed, that argument is meritless.

Accordingly, I take judicial notice that Arcos Dorados Holdings stated the following in its 2022 Form 20-F SEC filing:

> Occupancy expenses from franchised restaurants increased by $7.1 million or 16.4%, to $50.6 million in 2021, as compared to 2020, mainly due to the gain recorded in 2020 related to the settlement agreement with the remaining Puerto Rican franchisees in the market and the subsequent conversion of all restaurants in this market to Company-operated restaurants, and higher outside rent expenses.

Dkt. 72-1 at 106. In the same filing, I further note it stated:

> Puerto Rican franchisees had filed some lawsuits against McDonald's Corporation and certain subsidiaries purchased by the Company [Arcos Dorados Holdings]. On December 28, 2019 and March 31, 2020, the Company reached confidential settlement agreements with these franchisees, finalizing all controversies and disputes among the parties. As a consequence of the agreements, during January and May 2020, the Company acquired all the restaurants pertaining to the Puerto Rican franchisees.

*Id.* at 200.

Next, I note Arcos Dorados Holdings submitted a Subsidiary Joinder Agreement with its Form 20-F stating, "WHEREAS, pursuant to Section 5.5 of the Credit Agreement, the Borrower is required to cause one or more additional Subsidiaries to become a party to the Credit Agreement as Guarantors." Dkt. 72-2 at 1. I further note this agreement identifies Arcos Dorados Holdings as the borrower and Arcos Dorados PR as the additional guarantor. *Id.*

Further, I note Arcos Dorados Holdings's Form 6-K, filed with the SEC in May 2023, states it earned "$990.8 million in total first quarter revenue, a 25.3% year-over-year increase." Dkt. 72-3 at 5. In the same document, it also stated:

> First quarter net income attributable to the Company totaled $37.4 million, compared to net income of $24.5 million in the same period of 2022. Arcos Dorados [Holdings] generated net income of $0.18 per share in the first quarter 2023 compared to net income of $0.12 per share in the prior year quarter. Total weighted average shares for the first quarter of 2023 were 210,594,545 compared to 210,478,322 in the prior year's quarter.

*Id.* at 10. Finally, I note Arcos Dorados Holdings wrote the following in its May 2023 Form 6-K:

> As reported revenues totaled $259.3 million, up 27.2% in US dollars and 21.4% in constant currency versus the prior year quarter. NOLAD's systemwide comparable sales rose 16.6% year-over-year, or 2.8x blended inflation in the period, with particularly strong growth in Mexico and the French West Indies markets, while Costa Rica, Panama and Puerto Rico also delivered solid topline growth.

*Id.* at 13.

However, for the reasons stated above, I express no opinion on the truth of these statements, which the court will evaluate in light of any other relevant evidence at trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of October 2023.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge
